UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MONWELL DOUGLAS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:23-cv-01426-JMS-MKK |
| | ) |
| WARDEN, | ) |
| | ) |
| Respondent. | ) |

**Order Denying Petition for Writ of Habeas Corpus and Directing Entry of Final Judgment**

The petition of Monwell Douglas for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. IYC 23-03-0145. For the reasons explained in this Order, Mr. Douglas's habeas petition must be **denied**.

**A.   Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

### B. The Disciplinary Proceeding

On March 9, 2023, Officer Ajayi wrote a conduct report charging Mr. Douglas with use and/or possession of a cellular telephone or other wireless or cellular communication device, in violation of Indiana Department of Correction (IDOC) Adult Disciplinary Code A-121, stating:

> On 03/09/2023 at approximately 7:10pm I Officer O. Ajayi was making a routine walk through of HUS G and H units hallway and I spotted Incarcerated Individual Douglas, Monwell #150812 H3-4L making use of a cellular device inside the bathroom of H unit in the toilet area. He was found hiding with the pretense of using the toilet at the last end of the toilet by the window side. He handed over the phone to me from the pocket of his altered gym short. The cellular device was immediately confiscated and sent to shift office for photograph. The items was secured in I&I evidence locker 195. Incarcerated Individual Douglas was informed he would be receiving a conduct report for being in possession of a cellular phone. Incarcerated Individual Douglas was identified with his state issued ID card and H unit Bed board.

Dkt. 10-1 (errors in original).

On March 17, 2023, the screening officer advised Mr. Douglas of the charge. Dkt. 10-2. Mr. Douglas pleaded not guilty, did not request a lay advocate, and asked for Incarcerated Individual Harris to answer the question "was a routine walk through conduct[ed] through unit latrine?" *Id.* Mr. Douglas also requested that Incarcerated Individual Lewis answer the question "were you being watch[ed] through the window?" *Id.* He also asked the hearing officer to review the security camera footage for the hallway and latrine. *Id.* There were some postponements of the disciplinary hearing. Dkt. 10-3; dkt. 10-4; dkt. 10-5.

The hearing officer provided Mr. Douglas with a video review report which stated:

> On 3/09/2023, at approximately 6:28:00 pm, using camera: HUS G/H Hallway, I am able to witness Officer Strong conducting a security sweep of the units by briefly checking in the windows. At approximately 6:30:00 pm another un-identifiable Officer conducts a security sweep of the units, by briefly peering inside the windows, then he walks into the unit, using the backdoor. At approximately 6:41:20 pm, the un-identifiable Officer conducts a security sweep, by briefly peering inside the windows. At approximately 7:06:25 pm an un-identifiable officer

> briefly peers inside the latrine area window and then looks back inside appearing to notice something suspicious.
>
> The incident transpired at approximately 7:10:00 in the latrine stall area, there was no further Officers that walk down the hall until after the incident occurred. Nothing further too report.

Dkt. 10-7 (errors in original).

Witness Lewis stated: "I personally was not being watched through the window but there has [sic] been other times that I have been using the restroom and have been watched." Dkt. 10-8. Witness Harris stated: "I am not sure if it was a routine walk-through. But if I am to guess, I would say it was not because there were 4-5 CO's present at the time." Dkt. 10-9.

On March 1, 2023, the day of the disciplinary hearing, Mr. Douglas stated:

> Asked for Lt after ofc handed him write up. Stalls were full. Was placing hemorrhoid on ass. The phone was sitting in corner of stall. Somebody left it there. That's when ofc came running in. Said give me phone. Took him to classroom to strip him out. Takes shorts. Come out & seen same CO watching window. No conduct history for deuces.

Dkt. 10-6. The hearing officer found Mr. Douglas guilty after considering staff reports, statements, and the physical and video evidence. *Id*. The hearing officer explained:

> DHB has found you guilty due to report. Ofc Ajayi stated that he seen I/I Douglas with possession of the phone while peering in the bathroom window. I/I Douglas stated he briefly picked up to see who's it was. Not likely someone else left phone behind.

*Id.* (errors in original). The hearing officer sanctioned Mr. Douglas with a written reprimand, a 30-day loss of privileges, a 90-day loss of earned credit time, and a one level demotion of credit class. *Id.*

Mr. Douglas appealed to the facility head. Dkt. 10-10. As part of that appeal, Mr. Douglas included an affidavit from fellow inmate Joshua Sutton, who affirmed that Sutton had been using

3

the phone. Dkt. 10-10 at 6-7. Mr. Douglas's appeals were denied, and he filed this petition for a writ of habeas corpus. *Id.* at 1; dkt. 10-11.

    **C.    Analysis**

Mr. Douglas challenges the disciplinary action against him arguing that he was denied evidence and that the final reviewing authority wrongly declined to hold a new hearing after receiving a sworn statement from Mr. Sutton, claiming that Sutton had been using the cell phone. In support of his argument that he was denied evidence, Mr. Douglas also argues that the conduct report does not support the charge. This argument will be treated as a separate contention that the evidence was insufficient.

    **1. Denial of Evidence**

First, Mr. Douglas argues that he was denied evidence. He contends that he requested video from the hallway between the G and H units to show that the reporting officer's story was false and that the shorts should have been included as evidence.

Due process affords an inmate in a disciplinary proceeding a limited right to present "evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. But due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011), and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008). "Prison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017).

4

First, while Mr. Douglas argues that he was denied video evidence, the video was presented to the hearing officer. The Court has also reviewed the video and finds the video review summary to be consistent with the video itself, which depicts correctional officers performing security sweeps at various times.[1] Notably, there is no video of the inside of the restroom. Therefore he was not denied material, exculpatory video evidence. Next, to the extent that Mr. Douglas is understood to argue that the shorts should have been presented as evidence, he has not shown that he requested to present them as evidence. Because he did not request them as evidence, he cannot now argue that his rights were denied when they weren't presented. *See Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) ("We agree that if Piggie failed to make such a request either before or at the hearing, then the CAB could not have denied him due process by not considering the request.") (citing *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999) (due process does not require "the consideration of evidence that could have been but was not presented at the hearing.")).

Mr. Douglas has not shown that he was denied any requested evidence in violation of his due process rights.

### 2. Statement from Sutton

Mr. Douglas also argues that the final reviewing authority violated his rights by failing to order a rehearing after receiving a sworn statement by Joseph Sutton that Sutton was using the phone. First, as with the shorts, Mr. Douglas did not request to have Mr. Sutton provide evidence at or before the disciplinary hearing. In reply in support of his petition, Mr. Douglas asks the Court to expand the record to show that Mr. Sutton's statement is truthful. Dkt. 15 at 2. But whether Mr.

---

[1] The video was submitted to the Court *ex parte*, with the explanation that disclosure to the petitioner would create a safety and security risk by exposing the capabilities of the prison's surveillance system. Dkt. 11. For this reason, the filing shall be maintained on the docket *ex parte*.

5

Sutton's statement is truthful is irrelevant at this point. It is undisputed that Mr. Douglas did not seek to present evidence from Mr. Sutton until his appeal. He therefore cannot show that his due process rights were violated by the failure to present Mr. Sutton as a witness at his hearing. *See Piggie*, 277 F.3d at 925.

Next, even if his appeal was denied in error, Mr. Douglas still has not identified any violation of his due process rights. The Supreme Court in *Wolff* made clear that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." 418 U.S. at 556. The due process rights that apply, which are set forth in detail in *Wolff*, do not include any safeguards during an administrative appeal, nor even a right to appeal at all.

Finally, Mr. Douglas also contends, without evidentiary support, that there are other cases in which disciplinary action has been overturned after another inmate has come forward to claim responsibility. Dkt. 15 at 3. To the extent that Mr. Douglas can be understood to argue that his equal protection rights were violated, his bare statements that other inmates have had their disciplinary convictions overturned when they presented new evidence in their appeals is not enough to support this claim. To support a claim that his equal protection rights were violated, Mr. Douglas must show that (1) he was a member of a protected class, (2) he was treated differently from a similarly situated member of an unprotected class, and (3) the defendants were motivated by a discriminatory purpose. *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017). Further, if Mr. Douglas is claiming that he was personally singled out for disparate treatment, he " must establish that (1) a state actor has intentionally treated him differently than others similarly situated, and (2) there is no rational basis for the difference in treatment." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). By providing no evidence or detail about the other

cases he contends were reheard based on a statement provided during the appeal process, Mr. Douglas has not shown that his equal protection rights were violated.

In summary, Mr. Douglas has not shown that his rights were violated when Mr. Sutton's statement was not considered.

### 3. Sufficiency of the Evidence

In support of his argument that he was denied evidence, Mr. Douglas argues that the statement in the conduct report that the officer saw him using a cell phone is inconsistent with the statement that Mr. Douglas handed the phone to the officer from the pocket of his gym shorts. He elaborates on this argument in his reply, stating that, when requested, he handed the shorts, with the cell phone in them, to the officer. Dkt. 15 at 3. He contends, therefore, that he came to possess the phone only upon the officer's order. *Id.*

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274; *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

"In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits

7

has some factual basis." *McPherson*, 188 F.3d at 786 (quotation marks omitted). The conduct report alone can provide sufficient evidence to conclude Mr. Douglas possessed or used a cell phone on the date of the incident. *Id.*

Mr. Douglas was convicted of "use or possession of a cellular device" in violation of Code A-121, which is defined as: "Unauthorized use or possession of any cellular telephone or other wireless or cellular communications device." Dkt. 10-12 at 3. The conduct report, which states that Mr. Douglas was seen using a cell phone, is sufficient to support this charge. *See McPherson*, 188 F.3d at 786 (holding that a conduct report alone can be "some evidence"). Mr. Douglas's argument that the reporting officer's statements that he saw Mr. Douglas using the phone and that Mr. Douglas handed the phone to the officer from the pocket of the shorts are inconsistent asks the Court to reweigh the evidence and assess the reporting officer's credibility, which it cannot do in this habeas petition. *See id.* Moreover, both statements support a conclusion that, at the least, Mr. Douglas possessed the phone in violation of the disciplinary code.

### D.     Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles petitioner to the relief he seeks. Accordingly, Mr. Douglas's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 6/18/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

8

Distribution:

MONWELL DOUGLAS
150812
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel